EDWARD F. McALEER & others vs. BOARD OF APPEALS OF
BARNSTABLE & another
(and a companion case [1]).

Barnstable.   October 7, 1971. — March 6, 1972.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

Zoning, Special permit, Nonconforming use or structure, Hotel.
   Laches.   Words, "Not more detrimental to a neighborhood," "With-
   out substantial detriment to the public good."

A party who did not appeal from an unfavorable trial court deter-
   mination cannot seek a more favorable one in this court. [319–320]
An application by a town's zoning board of appeals of the standard
   "not more detrimental to a neighborhood" in deciding to grant a
   special permit under the town's zoning by-law to alter nonconform-
   ing hotel buildings was proper where that standard was stricter
   than the standard "without substantial detriment to the public
   good" if the latter applied to the proceeding. [320–321]
The trial judge in a suit under G. L. c. 40A, § 21, properly annulled
   a grant by a town zoning board of appeals of a special permit to
   convert nonconforming hotel staff dormitories into accommodations
   for overnight guests involving a change not only in the use but
   also in the nature of the facilities; but the judge properly upheld
   a substantial physical alteration of an annex to the hotel where its
   essential use for overnight guests did not change. [321–322]
Remodeling expense by a hotel after it was granted a year round
   liquor license did not, on the grounds of laches, bar an owner of
   property in the vicinity from seeking a writ of mandamus ordering
   the town building inspector to restrict the hotel to operating in the
   summer, as it had when the town's zoning by-law became effective.
   [322–323]
A hotel which had operated only in the summer when a local zoning
   by-law was adopted giving the hotel a nonconforming use status
   could lawfully operate year round subsequently where the by-law
   was generally tolerant of nonconforming uses and their expansion
   and did not specifically prohibit a mere increase in the time of a
   nonconforming use. [323–324]
CUTTER, J., concurring in the result.

BILL IN EQUITY filed in the Superior Court on June 9,
1967.
PETITION for a writ of mandamus filed in the Superior
Court on December 15, 1967.
The cases were heard by Hudson, J.

[1] Edward F. McAleer & others vs. Building Inspector of Barnstable.

*Herbert P. Wilkins* (*Carol S. Mone* with him) for the plaintiffs.

*Richard C. Anderson* for East Bay Lodge Corporation.

REARDON, J.   These appeals concern two cases consolidated for trial and heard together.   East Bay Lodge (the Lodge) is a Massachusetts corporation which operates an inn located on East Bay Road in the Osterville section of Barnstable.   It is located on five acres, and the rear of the property extends to Wianno Avenue which runs parallel to East Bay Road.   The main building and detached annex were built in 1900 and contained about sixty rooms available for overnight guests.   The so called girls' dormitory is a one story building with ten rooms which have been occupied by female employees. The boys' dormitory, used by male employees, is another building containing four bedrooms on the first floor and four on the second.   The cottage is a single building which has been rented by the week, month or season. Robert E. Kesten, the present owner and operator, purchased the business and property in 1965.   Zoning first became applicable in 1956, and the area was zoned Residence D.   Under the Barnstable zoning by-law hotels and motels are permitted in Residence D areas only as nonconforming uses.   When the zoning by-law became effective the Lodge operated only during the summer season, catering to overnight guests.   Over a period of time, however, the Lodge took fewer and fewer overnight guests and caters now more to transient diners.   In fact, for the year ending March 31, 1968, the Lodge earned no income from overnight lodging.   The business had acquired a seasonal liquor license in 1951 which became a year-round license in 1965, and the Lodge now remains open year around.   In 1956 the Lodge closed at 10:30 P.M. but in 1967 it was closing at 1 A.M.

On March 23, 1967, the Lodge sought a special permit from the board of appeals of Barnstable (board) to alter four buildings on its property: the annex, the two dormitories, and the cottage.   The board granted this permit

under the somewhat lenient provisions of § D 3 of the zoning by-law.[1]  The Superior Court judge hearing the matter de novo (*Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 558–559, *Lawrence* v. *Board of Appeals of Lynn*, 336 Mass. 87, 89) upon a bill in equity under G. L. c. 40A, § 21, annulled the decision of the board with respect to the dormitories because of their prospective conversion to a type of use different from that in 1956.  The judge upheld the decision of the board with respect to the other two buildings.  The plaintiffs, owners of real estate in the vicinity, appeal from that portion of the decree upholding the issuance by the board of a permit allowing the Lodge to alter the annex and the cottage, and the Lodge has appealed from that portion of the decree dealing with the dormitories.

McAleer and others also seek a writ of mandamus ordering Herbert D. Stringer, town building inspector, to prohibit the use of the Lodge except by persons who may be its guests during the summer months.  The judge held that notwithstanding some changes in the operation of the Lodge since 1956 (such as longer hours of service, and sale of food and drink to nonlodgers), the essential use of the Lodge as a restaurant and cocktail lounge did not change to the extent that the Lodge could not continue to operate under its nonconforming use privilege. The judge also ruled, however, that the change from "seasonal to year-round operation" constituted an unlawful expansion of the nonconforming use, and that the operation of the Lodge must be restricted to the four summer months.  The Lodge, which intervened in this proceeding, appeals.

The petitioners contend that the judge erred when he ruled that the Lodge might lawfully sell food and drink

---

[1] "In all Districts: (a) Provided the Board of Appeals first grants a special permit therefor, any such non-conforming building or structure may be altered or increased in size or any such non-conforming use may be extended over all or any part of the premises upon which the same is located at the time this by-law is adopted.  It is the intent of this paragraph that only substantial alterations require a special permit; minor alterations may be permitted at the discretion of the Building Inspector."

to nonlodgers. The petitioners did not appeal in this proceeding and therefore they cannot now seek here for a more favorable determination than that made by the court below. *Coe* v. *Coe,* 313 Mass. 232, 233. *Flower* v. *Billerica,* 320 Mass. 193, 196. *Bickford* v. *Dillon,* 321 Mass. 82, 84. *Welsch* v. *Palumbo,* 321 Mass. 399, 400.

## THE BILL IN EQUITY.

We first consider the action of the court on the bill in equity. The zoning by-law of the town of Barnstable (by-law) provides in § D 1 that "[a]ny lawful building or lawful use of a building or premises or part thereof in the Town of Barnstable existing at the time this by-law is adopted may be continued, although such building or use does not conform to the provisions hereof." Section D 3 (a) deals with alterations of nonconforming buildings. The plaintiffs argue that no standards guide the determination whether a special permit should issue. We disagree. Section Q 3 (b) of the by-law provides that "[a] decision of the Board of Appeals on a petition for special permits shall be . . . based on consideration of the following factors: . . . (2) An evaluation of all the evidence presented at the hearing by the petitioner and interested parties as it relates to the fulfillment of the spirit and intent of the by-law without substantial detriment to the public good." Since § D 3 (c) states that "[t]he Board of Appeals may permit any non-conforming use to be changed to any specified use not more detrimental to a neighborhood," the plaintiffs argue that § D contains its own standards, and that § Q (3) (b) (2) does not apply to § D (3) (a). In our view, however, the language of § Q 3 (b) (2), fairly read, sets a standard applicable in proceedings and action taken under those portions of § D which require a special permit.

The plaintiffs go on to say, however, that even if there be such a standard for the board it applied a different one in this instance and its decision should be annulled. The board said in its decision that the alterations sought by the Lodge "would not be more detrimental to the neigh-

borhood." The standard of § Q 3 (b) (2) posited the granting of such permit on the basis that work under it would not result in "substantial detriment to the public good." The judge correctly ruled that the standard employed by the board was a "sufficient adherence to the use of a proper standard." The distinction between the two phrases, "not more detrimental to a neighborhood," and "without substantial detriment to the public good," at least in this case, is one of words and not of substance. A decision of the board which complied with one standard usually would satisfy the other. This might not necessarily be so in all circumstances but here it would appear that the board applied a standard stricter than was required. The phrase "not more detrimental" implies that any alteration of a nonconforming use must not cause more harm than already exists. The phrase "without substantial detriment" on the other hand implies that a change may be made producing more harm provided that harm is not too significant. We hold that the proper standard was applied in this case. See *Carson* v. *Board of Appeals of Lexington,* 321 Mass. 649, 654–655; *Moore* v. *Cataldo,* 356 Mass. 325, 328.

Section Q 3 (b) (2) also requires that the board consider evidence respecting special permits as it relates to the fulfilment of the spirit and intent of the by-law. The plaintiffs argue that the board failed to do this. We note, however, that § D 3 (a) authorizes alteration or increase in the size of a nonconforming use, and a request for such alteration in our opinion does not seem to violate the spirit and intent of the by-law. The by-law would seem to contemplate just such a circumstance. In so far as the two dormitories are concerned, they are conversions which would result in the occupation by lodgers of what had been employees' quarters. Section N 1 (b) of the by-law applicable to Residence D districts states that "[n]o building shall be used for the purpose of taking lodgers except where such use of a building lawfully exists at the time this by-law is adopted." It is the position of the Lodge that the proper criterion for determining whether

a proposed change violates the by-law is whether the purpose of the facilities is changed.   It is argued that a change in who uses them does not constitute a violation, but here a change is proposed not only in the use but also in the nature of the facilities, for the buildings are to be changed from dormitory structures to motel-like accommodations for overnight guests.   The judge dealt correctly with the petition concerning the dormitories.

The judge sustained the board of appeals in its issuance of a special permit allowing alteration of the annex.  This is a three story wooden shingled building formerly used largely for overnight guests.   It contains twenty-five rooms, some seven of which were occupied by staff members.   The proposed changes in the annex are substantial.[2]   That these alterations are substantial does not mean that they are alterations beyond the scope of the permissible change under § D 3 (a).   That section specifically refers to possible "substantial alterations."   We think the proposed change does not violate § N 1 (b) or § D 3 (a).   The latter section speaks of a "building," and the essential use to which the annex will be put will not be changed by the alteration or change in the use of certain of the rooms on the third floor.   Indeed, there will be no net change in the number of rooms in the annex devoted to accommodating overnight guests.

## The Petition for Mandamus.

The first question in the mandamus proceeding is whether the petition is barred by laches by unreasonable delay in bringing it.   See *Goldstein* v. *Beal,* 317 Mass. 750, 759.  Notwithstanding a fairly heavy investment by the Lodge in remodeling after it was granted a year-round liquor license in 1965, we hold that laches is not a defence.   We have held that the doctrine of estoppel

---

[2] The length of the annex is to be extended four feet by the addition of a stairway at each end of the building.  The contour of the roof is to be changed, the bedrooms are to be converted into private entrance bedrooms, each with a bath, and a porch is to be removed.

cannot stay the hand of a municipality in enforcing its zoning by-law. *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162, and cases cited. "The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance. The public has an interest in zoning that cannot thus be set at naught." *Zahodiakin Engr. Corp.* v. *Zoning Bd. of Adjustment of Summit*, 8 N. J. 386, 396. Compare *Chilson* v. *Zoning Bd. of Appeals of Attleboro*, 344 Mass. 406, which has been cited to us. We feel here that the policy favoring enforcement of the zoning by-law outweighs the possibility that a *Chilson* type ruling might be made applicable here because of laches.

The prime question is whether the judge correctly ruled that the extension from a seasonal to a year-round use of the Lodge was an unlawful expansion of a nonconforming use. This requires a determination whether this extension was merely an increase in the intensity of the business within the nonconforming use privilege or a change so substantial as to amount to an unlawful expansion of a nonconforming use. The by-law of the town provides little explicit guidance. It does, however, express a spirit sympathetic to nonconforming uses and their expansion. Language hitherto quoted from § D 3 (a) is indicative of that fact. We read the spirit of the Barnstable by-law as containing an intent that may differ from the intended spirit expressed in by-laws of other municipalities. Thus in *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207, the zoning by-law expressly prohibited any change, enlargement or extension of a nonconforming use. It would seem that by-laws of the type encountered in the *Murphy* case would probably inhibit legitimate expansion of a nonconforming use from seasonal to a year-round basis. The Barnstable by-law seems to us broad enough to permit the increased use of the Lodge. We find support in this view in *Frost* v. *Lucey*, 231 Atl. 2d 441 (Maine), where the court allowed a hotel to expand its operation from a seasonal summer use to a year-round use. The zoning ordinance was toler-

ant of nonconforming uses. The court held that "the nonconforming use of the land for hotel purposes . . . is exactly the same whether the operation be in the winter time or during the summer. It is the identical nonconforming use carried on year round. The ordinance does not specifically define as a prohibited extension or enlargement mere increase of the nonconforming use in time, whether in the number of hours, days, weeks or calendar months during which the activity may be carried on." Pp. 448–449. Although the petitioners point out that the ordinance in the *Frost* case allowed a nonconforming use to "be changed to one having clearly the same character," p. 445, and the Barnstable by-law has no such provision, we point out that the Barnstable by-law does not "specifically define as a prohibited extension or enlargement mere increase of the nonconforming use in time," and given its general permissive spirit with respect to nonconforming uses, we refuse to read such a prohibition into the by-law. See *Green* v. *Garrett,* 192 Md. 52. But see *Beerwort* v. *Zoning Bd. of Appeals of Coventry,* 144 Conn. 731. See also *Hantman* v. *Randolph,* 58 N. J. Super. 127, a case which swung on evidence of a deleterious effect by virtue of year-round operation. There is no such evidence here. *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence,* 324 Mass. 433, provides no support for the petitioners. The change in use there involved was from an ice manufacturing business to a fuel oil business, and an increase in intensity was but one additional element. On the evidence, the change in use from seasonal to year-round, given the nature of the by-law, was a lawful change.

## CONCLUSION.

In the equity case, the final decree is affirmed. In the mandamus case the order for judgment that a writ issue is reversed and an order for judgment dismissing the petition is to be entered.

*So ordered.*

Mr. Justice Cutter concurs in the result.