WILLIAM M. BERLINER & others *vs.* MICHAEL L. FELDMAN & others.

Essex.    March 5, 1973. — June 22, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Zoning,* Nonconforming use or structure. *Words,* "Rebuilt."

A provision of a zoning by-law that a preëxisting nonconforming building might be "rebuilt" if damaged or destroyed was not so imprecise as to be void. [770–772]

A suit in equity against the owner of an inn antedating the local zoning by-law for declaratory relief to determine the rights of the defendant to rebuild a section of the inn which had been damaged by fire and then razed must be remanded to the Superior Court for findings on the issue of the voluntariness of the demolition so as to determine whether the preëxisting nonconforming use of the demolished section had been abandoned. [772]

While a provision of a zoning by-law limited the size and shape of a new inn to be constructed in place of sections of a preëxisting nonconforming summer inn destroyed by fire and the new inn must conform to the by-law to the extent possible, the new inn might have insulation and heat throughout, modern plumbing and separate baths for each room, and functional floor layouts, all of which were lacking in the original structure, and might also in the future operate throughout the year rather than merely in the summer. [773–777]

BILL IN EQUITY filed in the Superior Court on October 17, 1969.

The suit was heard by *Mitchell,* J.

*Ansel B. Chaplin* (*Roger D. Feldman* with him) for the plaintiffs.

*Israel Bloch* (*James H. Bagshaw* with him) for Michael L. Feldman.

*Dwain B. Smith,* Town Counsel, for the Town of Rockport, submitted a brief.

WILKINS, J. This bill for declaratory relief concerns rights under the Rockport zoning by-law of the owner of a preëxisting nonconforming inn, principally his rights following the destruction of the inn by fire.

Turk's Head Inn (the Inn) was operated as a summer hotel in Rockport from 1888 through 1963 when operation of the Inn ceased, although, as the judge ruled, the use was not abandoned in the zoning sense. See *Morin* v. *Board of Appeals of Leominster,* 352 Mass. 620, 623, and cases cited. Since 1951, when Rockport adopted zoning, the premises have been in an area zoned for single residence use, in which a hotel use, other than a preëxisting nonconforming one, is not permitted.[1]

The original Inn was a wooden, three-story structure, consisting of three sections or wings, connected by arms so as to form the shape of a capital E. In January, 1968, a fire damaged the center section of the Inn, and in 1969 the center section, the south wing and the connecting arms were razed. In September, 1969, after the center section, the south wing and the connecting arms had been taken down, a second fire damaged the interior and roof of the north wing. In the summer of 1970, the north wing was totally destroyed by fire.[2]

---

[1] In a single residence district "[n]o . . . inns, hotels or apartment houses are to be erected" (§ 7.1.2 of the zoning by-law), and "[m]otels . . . are not permitted uses." (§ 7.1.3.) An inn or hotel is defined as "[a] building erected for or used for paying guests, permanent or transient, where over six (6) bedrooms are used for such purpose." (§ 1 [f].) A motel or tourist court is defined as "[a] building providing travellers with lodgings typically united under one roof but having individual entrances, and with on site, off street, parking spaces." (§ 1 [m].)

[2] The fire in the summer of 1970 occurred after trial but came to the attention of the judge. He concluded that, because of the total destruction of the Inn, it was not necessary for him to pass on the propriety of specific proposals for the restoration or rebuilding of portions of the Inn.

The plaintiffs challenge the validity of a provision in the Rockport zoning by-law which states that a preëxisting nonconforming building may be "rebuilt if damaged or destroyed." The plaintiffs also argue that the judge erred in ruling that demolition of portions of the Inn following the 1968 fire was pursuant to an order of the town building inspector. They claim that the demolition of all but the north wing was a voluntary abandonment of those portions of the Inn. If in the circumstances at least some portion of the Inn may be rebuilt, we are asked to define the nature of that permissible rebuilding and the period of the year during which the rebuilt structure may be operated as an inn.[3]

The plaintiffs are thirty-four residents and taxpayers of the south end of Rockport who appear individually and as members of an unincorporated association of certain residents of that section of the town. The subject premises are situated in the southeasterly section of the town. The defendants are the present owner of the premises (Feldman), the board of selectmen and the town's building inspector.

Section 8.1 of the Rockport zoning by-law (§ 8.1) provides in part that "[a]ny lawful building or structure or use of a building, structure, or premises existing at the time this by-law is adopted, even if not in conformity with its provisions, may be continued [and may be] rebuilt if damaged or destroyed, provided that such rebuilding takes place within three years of such damage or destruction, and, if authorized by the Board of Appeals, may be enlarged."

The judge ruled that § 8.1 was authorized under the Zoning Enabling Act (G. L. c. 40A) and that the provisions of § 8.1 concerning the rebuilding of a destroyed nonconforming building were not so vague as to be in-

---

[3] In *Garfield* v. *Board of Appeals of Rockport*, 356 Mass. 37, this court held that a 1966 decision granting a variance to permit the construction of a motor inn on these premises was in excess of the authority of the Rockport board of appeals. The right, if any, to rebuild a structure damaged by fire was not there involved.

valid. The plaintiffs appeal from a final decree declaring the relevant portions of § 8.1 to be lawful and valid.[4] The judge filed a report of material facts. The evidence is reported.

1. The provisions of § 8.1 allowing the Inn to be rebuilt are valid. General Laws c. 40A, § 5, prescribes certain minimum tolerances which must be accorded to preëxisting nonconforming uses. *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207, 209, and cases cited. *Planning Bd. of Reading* v. *Board of Appeals of Reading*, 333 Mass. 657, 660–661. Although G. L. c. 40A, § 5, exempts existing nonconforming uses and buildings from zoning regulations (*Cullen* v. *Building Inspector of No. Attleborough*, 353 Mass. 617, 677), it does not confer the right to erect a new building in place of an existing building used for a nonconforming purpose. See *Planning Bd. of Reading* v. *Board of Appeals of Reading, supra,* 661; *Chilson* v. *Zoning Bd. of Appeal of Attleboro*, 344 Mass. 406, 411–412, and cases cited. Nevertheless, as the judge correctly ruled, there is no statutory prohibition against a zoning provision which grants special rights to the owner of a preëxisting nonconforming use to rebuild a structure which has been destroyed by catastrophe. See *Chilson* v. *Zoning Bd. of Appeal of Attleboro, supra,* 412–413. Compare *LaMontagne* v. *Kenney*, 288 Mass. 363, 366–368.

The plaintiffs contend, however, that the language of § 8.1 is so imprecise as to the nature of the rebuilding which may be undertaken that it is invalid. They assert that the nature and extent of any permitted rebuilding must be defined in the by-law and that the Rockport by-law contains no such guidance whatsoever. They place reliance on decisions of this court which require that ade-

---

[4] The decree also declared that the nonconforming use of the Inn as an inn had never been abandoned. The plaintiffs do not challenge that determination but do assert, as stated above, that portions of the Inn were voluntarily razed and thus abandoned. Feldman does not claim that the demolition of the south wing and the connecting arm between it and the center portion of the Inn was necessitated by fire damage, and he has at no point asserted a right to rebuild the south wing or that connecting arm.

quate standards be prescribed in any by-law which authorizes a local board of appeals to grant exceptions under G. L. c. 40A, § 4, for specific uses in given zoning districts. See, e.g., *McAleer* v. *Board of Appeals of Barnstable*, 361 Mass. 317, 320. It is true that if there is no standard in a zoning by-law to guide a board of appeals in the granting of such exceptions, the by-law provision is invalid. *Planning Bd. of Reading* v. *Board of Appeals of Reading*, 333 Mass. 657, 661–662. This requirement of standards is designed to deny to a local board an unlimited delegation of power to engage in a discriminatory exercise of authority. See *Smith* v. *Board of Appeals of Fall River*, 319 Mass. 341, 344; *Clark* v. *Board of Appeals of Newbury*, 348 Mass. 407, 408–409. Where, however, the local regulation grants an absolute right to take certain action, no such discretion is to be exercised and that need for such standards does not exist.

The question remains, however, whether the provision concerning rebuilding is "so vague and ambiguous that its meaning can only be guessed at." *O'Connell* v. *Brockton Bd. of Appeals*, 344 Mass. 208, 212. A by-law that uncertain of meaning could lead to arbitrary action. It would violate the first essential of due process of law and for that reason would be void. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 134. *Commonwealth* v. *Carpenter*, 325 Mass. 519, 521. *O'Connell* v. *Brockton Bd. of Appeals, supra*, 210, 212.

We hold that the word "rebuild," meaning to build again, is an "everyday term" whose meaning can be determined "according to the common and approved usages of the language" (*Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148; *Jackson* v. *Building Inspector of Brockton*, 351 Mass. 472, 475, and cases cited), and that it is not so imprecise as to make void the by-law provision permitting rebuilding of a damaged or destroyed nonconforming structure. The need for sufficient certainty in the meaning of the by-law, so that persons of common intelligence do not have to guess at its meaning and application, serves as a guide, however, in defining

the nature of any permissible rebuilding.   (See part 3 of this opinion below.)

2.   The plaintiffs assert that because the middle portion of the Inn, the south wing and the connecting arms were voluntarily and unnecessarily razed by Feldman after the 1968 fire, he abandoned those portions of the Inn and any right to rebuild them.   The judge found that this demolition followed an order of the building inspector that "the buildings [be] demolished and removed."   There is no evidence to support such a finding, although there was evidence that the building inspector, who was also the fire chief, recommended to the board of selectmen that the center portion of the building which was involved in the 1968 fire was a definite fire hazard and that it should be razed.   As building inspector he had authority to require that Feldman take action to make the building safe, although demolition was not the only remedial step Feldman might have taken.   G. L. c. 143, §§ 6–9.   The judge did not find, and on this record we cannot determine, that demolition of the center portion of the Inn and the arm connecting the north wing was required as a matter of public safety or that that demolition was economically reasonable because the cost of restoration was greater than the cost of new construction.[5]   This case must, therefore, be remanded to the Superior Court for further findings on the issue of the voluntariness of the demolition of the entire center portion of the Inn and the connecting arm to the north wing.[6]

---

[5] In fact the demolition may have been motivated by considerations wholly apart from the extent of the damage and the relative costs of restoration and new construction.   At the time the demolition was commenced in March, 1969, the case of *Garfield* v. *Board of Appeals of Rockport,* 356 Mass. 37, was pending in this court.   Feldman may have demolished portions of the Inn without regard to the extent of the damage, acting in optimistic expectation that this court would affirm the Superior Court decree which had sustained the granting of a variance for the construction of a motel on the premises.   In any event, even under a by-law such as the Rockport by-law, the owner of a preëxisting nonconforming use is not automatically entitled to construct an entirely new building upon the occurrence of fire damage, however slight.

[6] If the demolition in 1969 exceeded what was necessary for safety purposes and was not economically justified on the basis of the rela-

What we have said disposes of the issues decided by the judge which have been argued before us.  The plaintiffs and Feldman urge us, however, to pass on two questions as to which they requested a declaration of right in their bill and answer, respectively.  Because these issues are asserted to be issues of continuing controversy between the plaintiffs and Feldman, we shall undertake to make a declaration of right on each of them to the extent possible on the record before us.  See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731, and cases cited. *Harvard* v. *Maxant,* 360 Mass. 432, 437.

3. On the question of the nature of the permissible reconstruction of the Inn, the plaintiffs concede that, if he may rebuild at all, Feldman has the right to effect some modernization and that he need not rebuild the Inn "timber by timber."  They do argue, however, that the structure must be functionally the same as the original. It must lack heat and private baths in bedrooms where none existed before, and must perpetuate inconvenient access between certain portions of the structure.  Feldman contends, on the other hand, that he is subject only to the requirements that the building be used as an inn and that the new building be no greater in size or ground area coverage than the original building.

There is no decision of this court which discusses the meaning of the words "rebuild" or "rebuilt" appearing in a zoning provision which permits the rebuilding of a nonconforming structure destroyed by catastrophe. There are in fact few cases anywhere in the country which deal with this problem.  Perhaps this dearth of authority is attributable to the general circumstance that zoning regulations tend to provide that an owner of a nonconforming structure is not entitled as of right to rebuild if the structure is destroyed to more than a particular per cent of its value.  See Rathkopf, Zoning and

tive costs of restoration and reconstruction, it is irrelevant that the center portion of the Inn and the northerly connecting arm might have been totally destroyed by the 1970 fire which leveled the north wing.

Planning (3d ed.) c. 61, § 7; Anderson, Am. Law of Zoning, § 6.56, pp. 430–431.

We are not, however, totally without guidance from decisions elsewhere. See annotation, 87 A. L. R. 2d 4, 103–108. The fullest discussion of this point we have found appears in *Piccolo* v. *West Haven,* 120 Conn. 449, which involved the right of the owner of a nonconforming structure to rebuild it after it was destroyed by fire. The zoning regulation allowed the building to be "rebuilt" if it was "reconstructed and used as it was prior to such destruction." The court sustained as not arbitrary a decision of a local zoning board which concluded that a new building twenty-five per cent wider than the old building was not a "reconstruction." P. 454. The court said, however, that the local zoning "regulations, reasonably construed, would not require an exact reproduction of the old building and, if a similar use of the building . . . [were] intended, minor variations in its interior construction or otherwise would not justify a holding that the new building was not a substantial reconstruction of the old one." P. 454. See also *Kellman* v. *McShain,* 369 Pa. 14, 18 (in rebuilding a nonconforming truck garage which had been damaged by explosion, the owner was not required to perpetuate a hole in the roof through which hay had been lowered when the building had been used as a stable).

In addition to the limited assistance we may obtain from decisions in other jurisdictions, we are aided by the requirement that the word "rebuilt" have a meaning sufficiently precise so as to eliminate conjecture as to its meaning (see the discussion in part 1 of this opinion). Moreover, our decisions dealing with changes in nonconforming structures serve as some indication of what the owner of such a destroyed structure may do.

Any reconstruction must conform, to the extent possible, with the requirements of the present zoning by-law. See *Selectmen of Hatfield* v. *Garvey,* 362 Mass. 821, 824. The Inn may not therefore become a motel because under

the Rockport zoning by-law a distinction is made between a hotel and a motel. See fn. 1 above.

We have accepted the principle that improved and more efficient means of pursuing a nonconforming use are permissible if they are ordinarily and reasonably adapted to the original use and do not constitute a change in the original nature and purpose of the undertaking. *Wayland* v. *Lee,* 325 Mass. 637, 643. Consistent with this view we have approved the installation of heat and electricity in a nonconforming structure (*Morin* v. *Board of Appeals of Leominster,* 352 Mass. 620, 622) and interior remodeling, including the enclosure of porches (*Paul* v. *Selectmen of Scituate,* 301 Mass. 365, 368, 370; *Crawford* v. *Building Inspector of Barnstable,* 356 Mass. 174, 177–178). Although each circumstance must be assessed on its facts, and particularly in relation to the applicable by-law, interior changes not amounting to reconstruction or structural change (G. L. c. 40A, § 5) generally may be made in a nonconforming building. On this basis the Inn as rebuilt may properly have insulation and heat throughout; it may have modern plumbing and separate baths for each room; and it may have functional floor layouts, adopted without preservation of former inconveniences.

The limits of those portions of the Inn which were not abandoned serve as a guide as to the size and shape of what may be built. The floor area, ground coverage, number of stories, and height and other dimensions of the Inn's north wing (and of its center portion and connecting arm, if they were not abandoned) delimit the maximum permissible size and shape of the rebuilt structure.

We do not have before us any renderings, plans or even sketches showing what Feldman would now propose to construct. That is understandable because the final fire, which totally consumed the north wing, occurred after the trial of this case. We cannot, therefore, be more precise as to the specific features of any building which may be rebuilt on the site.

4. If it is rebuilt, the Inn may *be operated as matter of right throughout the year.* In *McAleer* v. *Board of Appeals of Barnstable*, 361 Mass. 317, 322–324, we recently considered the question of the right of a preëxisting nonconforming summer use to expand to a year-round use. We there indicated that, in the absence of explicit guidance in the by-law, the question would be determined by the spirit expressed in the by-law toward nonconforming uses and their expansion. We said that a by-law such as that considered in *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207, which expressly prohibited any change, enlargement or extension of a nonconforming use "would probably inhibit legitimate expansion of a nonconforming use from seasonal to a year-round basis." P. 475. On the other hand, the by-law involved in the *McAleer* case was found to have a "general permissive spirit with respect to nonconforming uses" (p. 475) and to express "a spirit sympathetic to nonconforming uses and their expansion" (p. 474), and we held that the nonconforming use could lawfully be expanded "from seasonal to year-round, given the nature of the by-law." Pp. 475–476.[7]

We turn, therefore, to a consideration of the language of the Rockport zoning by-law to determine the town's expressed attitude toward nonconforming uses. Apart from a definition of a "non-conforming use" in § 1, the only language in the zoning by-law on the subject of nonconforming uses appears in § 8.1. The provision in § 8.1 that any lawful nonconforming building or use may be continued is simply a recognition of the minimum tolerance of nonconforming uses which G. L. c. 40A, § 5,

---

[7] The Barnstable by-law considered in the *McAleer* case provided that, if the board of appeals should grant "a special permit therefor, any . . . non-conforming building or structure may be altered or increased in size or any . . . non-conforming use may be extended over all or any part of the premises upon which the same is located at the time this by-law is adopted." The by-law further provided that minor alterations could be permitted at the discretion of the building inspector. P. 470, fn. 1. The Barnstable by-law also allowed a damaged nonconforming building to be repaired or rebuilt as matter of right. See *Crawford* v. *Building Inspector of Barnstable*, 356 Mass. 174, 177, fn. 4.

requires. However, the expressed right to rebuild a non-conforming structure "if damaged or destroyed" goes beyond that minimum tolerance. Additionally, § 8.1 provides that a nonconforming building or use, "if authorized by the Board of Appeals, may be enlarged." Although more terse than the language considered in the *McAleer* case (quoted in part in fn. 7), this portion of § 8.1 expresses the same "permissive spirit" with respect to tolerance of nonconforming uses and their expansion as did the *McAleer* by-law.[8] Consequently, if rebuilt, the operation of the Inn may as of right be carried on throughout the year.

5. The final decree is reversed and the case is remanded to the Superior Court for a further hearing on the issue of the voluntariness of the demolition of the center portion of the Inn and the arm connecting it to the north wing. Upon the determination of that question, a final decree shall be entered incorporating the provisions of the final decree from which the plaintiffs have appealed (which declared that the nonconforming use of the Inn was not abandoned and that § 8.1 of the Rockport zoning by-law is lawful and valid). The decree shall further declare that, if rebuilt, (a) the Inn must be a hotel and not a motel, as defined in the Rockport zoning by-law, and the rebuilt structure must, to the extent possible, conform to the requirements of that zoning by-law; (b) the Inn may not exceed in ground coverage, height and other dimensions, number of stories and floor area the Inn's north wing (and its center portion and northerly connecting arm, if they were not abandoned); and (c) the Inn may have insulation and heat throughout, modern plumbing and separate baths for each room and func-

---

[8] We need not decide whether this portion of the Rockport by-law is invalid because it lacks standards to guide the board of appeals in passing on a requested enlargement of a nonconforming building or use (a fact situation not involved here). See *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 637–638; *Turnpike Realty Co. Inc.* v. *Dedham*, 362 Mass. 221, 231–232. The tolerant attitude of the town toward nonconforming uses may be ascertained from that language, even if, for other purposes, it may be ineffective.

tional floor layouts.    The decree shall in addition declare
that the Inn may be open throughout the year.

*So ordered.*