NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1586                                          Appeals Court

CYNTHIA WELCH-PHILIPPINO & another[1]  vs.  ZONING BOARD OF APPEALS
OF NEWBURYPORT & others.[2]


No. 13-P-1586.

Suffolk. June 2, 2014.  -  September 9, 2014.

Present:  Grasso, Vuono, & Rubin, JJ.


Zoning, Nonconforming use or structure, Special permit, By-law.



    Civil action commenced in the Land Court Department on
April 7, 2011.

    The case was heard by Alexander H. Sands, III, J.


    Kevin W. Lawless for the plaintiff.
    Ryan P. McManus (Diane C. Tillotson with him) for Port
Associates Limited Partnership & another.


    GRASSO, J.  Cynthia Welch-Philippino (Philippino) appeals

from a Land Court judgment determining that the planned

_____

    [1] Anthony Philippino.

    [2] The city of Newburyport, Port Associates Limited
Partnership, and Whittier Health Network, Inc.

reconstruction of a nursing home (the project) by Port Associates Limited Partnership and Whittier Health Network, Inc. (the defendants), is permissible as of right under G. L. c. 40A, § 6.  Philippino principally challenges the trial judge's ruling that a dimensionally conforming commercial structure is not, by virtue of its employment for a nonconforming use, a nonconforming structure for purposes of the first sentence of G. L. c. 40A, § 6, first par.  We conclude, as did the trial judge, that where the project does not work a "change or substantial extension" (ibid.) of the preexisting nonconforming commercial use, the reconstruction and replacement of the existing dimensionally conforming structure with a new dimensionally conforming structure is lawful as a matter of right and not subject to the second sentence of G. L. c. 40A, § 6, which provides that preexisting nonconforming structures or uses may only be extended or altered by special permit.

1.  Background.  The defendants' 100-bed nursing home facility, built in 1968, is a dimensionally conforming commercial structure situated on a large (5.5 acre) conforming lot in a residential zone.  Use of the facility as a nursing home pre-dates the adoption of the Newburyport zoning ordinance, and thus is a lawful preexisting nonconforming use.  The defendants plan to replace the old structure with a modernized

121-bed facility that will meet the dimensional requirements of the current zoning ordinance.

The Newburyport zoning board of appeals (board) issued a special permit that authorized the defendants to proceed with the project, and abutters Philippino and her husband appealed under G. L. c. 40A, § 17.  After trial, a Land Court judge concluded that the project (1) does not constitute a "change or substantial extension" of the lawful preexisting nonconforming commercial use, and (2) is therefore permissible as of right under G. L. c. 40A, § 6, and not subject to the more restrictive special permit requirements of the local zoning ordinance.[3]

On appeal from the judgment, Philippino's primary claim is that a conforming structure used for a nonconforming purpose is treated as a nonconforming structure under the first sentence of G. L. c. 40A, § 6.  Consequently, she argues, reconstruction and replacement of such a structure is subject to the provisions of the second sentence of that section,[4] and of its cognate section

---

[3] Alternatively, the judge ruled that if a special permit were required for the project, the board correctly determined that the new building was not substantially more detrimental to the neighborhood than the existing structure or use, and was not an intensification or extension of the use under Section IX-B.2.B(1) of the local zoning ordinance.  See note 5, infra.

[4] The second sentence provides, "Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that

of the Newburyport zoning ordinance, Section IX-B.2.[5]  We disagree.  Because both the existing and replacement structures are dimensionally conforming structures, the judge's determination under the first sentence of G. L. c. 40A, § 6, that the project does not entail a "change or substantial extension" of the lawful preexisting nonconforming commercial use ends the inquiry.[6]  The protections afforded under the first

---

such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming [structure or] use to the neighborhood."  G. L. c. 40A, § 6, second sentence, inserted by St. 1975, c. 808, § 3.  See Bransford v. Zoning Bd. of Appeals of Edgartown, 444 Mass. 852, 857 (2005) (Greaney, J., concurring).

[5] Section IX-B.2.B(1) of the ordinance requires the permit-granting authority to find that "there will be no intensification or extension of an existing nonconformity or the addition of a new nonconformity."  Section IX-B.2.B(2) requires a finding that "the [project] will not be substantially more detrimental to the neighborhood than the existing nonconforming structure or use."

[6] We reject Philippino's contention that the replacement structure is not dimensionally compliant because the front-yard setback in a residential district is thirty feet and the building is only set back twenty-two feet.  We agree with the trial judge and the board that the twenty-foot front-yard setback specifically designated for a building used as a nursing home, rather than the general setback for a residential district, controls.  See Section VI-A of ordinance, "Table of Dimensional Requirements."  If each nursing home in Newburyport had to comply with the front-yard setback of the district in which it was located, there would be no purpose in the zoning ordinance specifying a twenty-foot setback for nursing homes. See Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 475 (2012) (according deference to local board's reasonable interpretation of its own zoning by-law).

sentence of G. L. c. 40A, § 6, govern, and the provisions of the second sentence of § 6 are not implicated.[7]

2. Discussion. "[T]he primary source of insight into the intent of the Legislature is the language of the statute." International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). The first sentence of G. L. c. 40A, § 6, inserted by St. 1975, c. 808, § 3, provides in pertinent part:

> "Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence . . . but shall apply to any change or substantial extension of such use, . . . to any reconstruction, extension or structural change of such structure and to any alteration of a structure . . . to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent . . ." (emphases supplied).

By its plain language, the statute makes an important distinction between preexisting nonconforming uses and nonconforming structures, and articulates different bases upon which each loses its grandfathering protection. Nonconforming uses lose their protection against subsequently enacted local zoning ordinances when there is "any change or substantial

---

[7] Because the judge was correct in ruling that the protections of G. L. c. 40A, § 6, afford the defendants the right to construct the project, we do not address the judge's alternative conclusion that if a special permit were required, the board correctly ruled that the project would not be substantially more detrimental to the neighborhood than the existing nonconforming use and would not result in any intensification or extension of an existing nonconformity or addition of a new nonconformity.

extension of such use."  Nonconforming <u>structures</u>, on the other hand, lose their protection when there is "any reconstruction, extension or structural change of such structure," or modification that amounts to "alteration of a structure . . . for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent."[8]  See <u>Barron Chevrolet, Inc</u>., v. <u>Danvers</u>, 419 Mass. 404, 409-410 (1995).  Significantly, there is no language in G. L. c. 40A, § 6, suggesting that its grandfathering provisions for nonconforming uses and structures have application to <u>conforming</u> uses and structures.  We view the omission of reference to <u>conforming</u> structures as significant. See <u>General Elec. Co</u>. v. <u>Department of Envtl. Protection</u>, 429 Mass. 798, 803 (1999), and cases cited (court will not add words to statute that Legislature did not put there).

With respect to prior nonconforming uses and structures that have lost grandfathering protection for the reasons just

_____

[8] We are not concerned here with the second "except" clause of the first sentence of G. L. c. 40A, § 6, which provides for exemption from local regulation where "alteration, reconstruction, extension or structural change to a <u>single or two-family residential structure</u> does not increase the nonconforming nature of said structure" (emphasis supplied). See <u>Bransford</u> v. <u>Zoning Bd. of Appeals of Edgartown</u>, 444 Mass. 852, 859-862 (2005) (Greaney, J., concurring) (considering whether reconstruction of dimensionally conforming structure on undersized lot increases nonconforming nature so as to remove protections of second "except" clause).

specified, the second sentence of § 6 (see note 4, supra) provides that "[p]reexisting nonconforming structures or uses may be extended or altered" if the proper local authority makes a finding "that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming [structure or] use to the neighborhood."  See Barron Chevrolet, Inc. v. Danvers, supra at 412-413.

The judge below recognized the important statutory distinction between nonconforming uses and structures, and the inapplicability of the statute's provisions regarding loss of grandfathering protection when the "reconstruction, extension, or structural change" relates to a conforming structure. Because the defendants' existing nursing facility and its proposed replacement are dimensionally conforming structures that serve a nonconforming use, the judge appropriately directed his focus to the sole question of import:  whether the project proposed a "change or substantial extension" of the nonconforming use.

To answer that question, the judge correctly invoked the familiar three-pronged test described in Powers v. Building Inspector of Barnstable, 363 Mass. 648, 653 (1973):  (1) whether the proposed use reflects the nature and purpose of the use prevailing when the zoning ordinance took effect, (2) whether there is a difference in the quality or character, as well as

the degree, of use, and (3) whether the proposed use is different in kind in its effect on the neighborhood.  Measuring the project against those considerations, the judge concluded that the project did not work a "change or substantial extension" of the use because (1) the locus was operated and would continue to operate as a nursing home, (2) operation of a nursing home with 121 beds rather than 100 beds would not alter the quality, character, or degree of that use, and (3) the project would not have any adverse effect on the neighborhood different in kind from the existing use, but would have a "mitigating impact."[9]  In consequence, the judge concluded that the project fell within the protection of the first sentence of § 6 and was permissible as of right.  See Schiffenhaus v. Kline, 79 Mass. App. Ct. 600, 605 (2011) (local zoning ordinance or by-law cannot conflict with the statute).

The determination that the project does not work a "change or substantial extension" of the prior nonconforming use as a nursing home is amply supported by the factual findings, and Philippino does not seriously contest this aspect of the judge's

---

[9] Here, the judge cited evidence of several salutary aspects of the proposed facility's design, including that the reconstructed building would stand further from the neighborhood's residences and closer to the nearby industrial zone, that improvements in lighting and screening would result in less glare into the neighborhood, and that the relocation of the loading dock would address noise concerns of the Philippinos.

decision.  Rather, she argues that the judge erred when he concluded that the project does not fall within the § 6 limitation on grandfathering protection for "reconstruction, extension or structural change" of a nonconforming structure. That is so, Philippino argues, because notwithstanding that both the existing and proposed structures comply with existing dimensional and density regulations, they are devoted to a nonconforming use.  Put differently, Philippino argues that a nonconforming structure for purposes of G. L. c. 40A, § 6, encompasses a structure devoted to a nonconforming use even when there is no nonconformity in the structure itself.  Under Philippino's view of the statute, a dimensionally conforming structure devoted to a nonconforming purpose is subject to the "reconstruction, extension or structural change" provision of the statute, which, in turn, renders the project subject to regulation under the Newburyport zoning ordinance.

We conclude that the plain language of the statute does not support such strained interpretation.  The fundamental flaw in Philippino's argument is that it conflates structures and uses -- measuring structural conformity by reference to the use of the structure, and treating reconstruction of a conforming commercial structure that serves a nonconforming use as if it

were a nonconforming structure.  The statute treats structures
and uses differently.[10]

As discussed earlier, in enacting § 6, the Legislature
focused on the grandfathering rights to be accorded to
nonconforming uses and nonconforming structures, drawing a clear
distinction in the protections afforded.  See Gale v. Zoning Bd.
of Appeals of Gloucester, 80 Mass. App. Ct. 331, 338 n.10
(2011); Bobrowski, Massachusetts Land Use and Planning Law
§ 6.01 (3d ed. 2011).  We discern nothing in the language of § 6
that reflects the Legislature's intent to treat the
nonconforming use of a structurally conforming building as
creating structural nonconformity.  Rather, the expressed
statutory test for loss of grandfathering protection for a
nonconforming use is whether there is a "change or substantial
extension" of the use; that for a nonconforming structure is
whether there is "reconstruction, extension or structural
change" of the nonconforming structure.

While we are aware of no case holding that replacement of a
conforming structure devoted to a nonconforming use that does
not result in a change or substantial extension of the use is

---

[10] The distinction between structures and uses within § 6,
and the potential for confusion arising from the frequent
references to the two terms in common, was the subject of
discussion in Willard v. Board of Appeals of Orleans, 25 Mass.
App. Ct. 15, 20-21 & n.9 (1987).

permissible as of right under the first sentence of G. L. c. 40A, § 6, no case holds otherwise. Such cases as approach the issue concern the replacement of prior <u>nonconforming structures</u> devoted to a prior nonconforming use, and, further, suggest that the statute's reach is limited to nonconforming uses and nonconforming structures, not conforming structures devoted to a nonconforming use. See <u>Powers</u> v. <u>Building Inspector of Barnstable</u>, 363 Mass. at 658 n.4 ("[T]he existence of a lawful nonconforming use does not permit the erection of additional buildings for <u>the extension or enlargement of that use</u>" [emphasis supplied]).

In <u>Cape Resort Hotels, Inc</u>. v. <u>Alcoholic Licensing Bd. of Falmouth</u>, 385 Mass. 205, 215 (1982), which involved a change from a resort hotel for older customers to an entertainment complex catering to young nonguests, the court noted that "a valid nonconforming use does not lose that status merely because it is improved and made more efficient," provided the changes are "ordinarily and reasonably adapted to the original use and do not constitute a change in the original nature and purpose of the undertaking" (citations omitted). Similarly, in <u>Barron Chevrolet, Inc</u>. v. <u>Danvers</u>, 419 Mass. at 409, which involved whether certain changes to signage constituted changes in prior nonconforming <u>uses</u>, the Supreme Judicial Court noted that under § 6, "a by-law does not apply to a prior <u>nonconforming use or</u>

structure, but does apply to 'any change or substantial extension of such use . . . [and] any reconstruction, extension or structural change of such structure . . .'" (emphases supplied) (quoting from G. L. c. 40A, § 6). As previously discussed, the court emphasized that the right of a municipality to regulate changes under the second sentence of § 6 "is limited to the changes, extensions, reconstructions and alterations to prior nonconforming uses and structures to which, under the first sentence of G. L. c. 40A, § 6, zoning ordinances and by-laws apply" (emphasis supplied). Id. at 413. Because the changes there did not constitute a "change, extension, reconstruction or alteration" of a prior nonconforming use or structure to which, under the first sentence of § 6, zoning ordinances and by-laws apply, the town could not regulate them. See Derby Ref. Co. v. Chelsea, 407 Mass. 703, 713 (1990) (nature and purpose of use -- "bulk deliveries by ocean-going vessels, bulk tank storage and wholesale distribution" -- were unchanged despite fact that product changed from fuel to liquid asphalt and facilities were altered to allow for this change).

We do not read Berliner v. Feldman, 363 Mass. 767, 770 (1973), on which Philippino primarily relies, as requiring a different result. Berliner did not involve the grandfathering protection afforded to a preexisting nonconforming use under G. L. c. 40A, § 6. Rather, it involved interpretation of the

provisions of a <u>local zoning by-law</u> regarding whether a preexisting nonconforming structure (an inn) that was damaged or destroyed by fire might be rebuilt.  Because <u>Berliner</u> concerned the reconstruction of a preexisting nonconforming structure devoted to a nonconforming use (conducting an inn in a residence district), to the extent that the statutory predecessor of G. L. c. 40A, § 6,[11] was implicated at all, the applicable provision was that allowing for local regulation when there is a "reconstruction, extension or structural change" of a nonconforming structure.  See <u>id</u>. at 771, 773, 774.  See also Healy, Massachusetts Zoning Manual § 6.7.2 (4th ed. 2007) (building in <u>Berliner</u> appeared to be dimensionally nonconforming).  Accordingly, the court's statement to the effect that the statute "does not confer the right to erect a new building in place of an existing building used for a nonconforming purpose," <u>Berliner</u> v. <u>Feldman</u>, <u>supra</u> at 770, must be read in that limited context.[12]

---

[11] The provisions of G. L. c. 40A, § 6, and its predecessor, G. L. c. 40A, § 5, as appearing in St. 1954, c. 368, § 2, do not differ for present purposes.

[12] Although <u>Berliner</u> did not set forth the dimensional nonconformities of the structure with precision, the decision clearly refers to the inn as "a preexisting nonconforming inn," 363 Mass. at 768, and discusses the right of the "owner of a <u>nonconforming structure</u>" to rebuild.  <u>Id</u>. at 773-775 (emphasis supplied).

In sum, the judge did not err in ruling that the project was permissible as of right under G. L. c. 40A, § 6.

<u>Judgment affirmed</u>.
