CHR General, Inc. vs. City of Newton.

Middlesex. May 4, 1982. — September 1, 1982.

Present: Hennessey, C.J., Wilkins, Nolan, Lynch, & O'Connor, JJ.

*Municipal Corporations*, Home rule, Police power, Condominiums. *Real Property*, Condominium.

A city ordinance restricting the conversion of residential rental units to condominium or cooperative ownership was a private or civil law governing the relationship between landlord and tenant and thus was invalid under the Home Rule Amendment to the Massachusetts Constitution. [354-355]

Adoption of a city ordinance restricting the conversion of residential rental units to condominium or cooperative ownership was not authorized as an exercise of either the city's police power or its zoning power. [355-358]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on August 24, 1981.

Upon transfer to the Superior Court, the case was heard by *Adams*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Ouida C. M. Young*, Assistant City Solicitor, for the defendant.

*Roscoe Trimmier, Jr.*, for the plaintiff.

*Philip S. Shaw*, for Chestnut Hill Gardens Tenants Association, amicus curiae, submitted a brief.

Lynch, J. CHR General, Inc. (CHR), brought an action for declaratory and injunctive relief against the city of Newton, to determine the validity of a city ordinance intended to regulate the conversion of residential rental units to condominiums,[1] and to enjoin the city from enforcing the ordi-

---

[1] The Attorney General received proper and timely notice of the action as required by G. L. c. 231A, § 8.

The ordinance in question applies to the conversion of rental housing units to either condominium or cooperative ownership. In this opinion,

nance while the action was pending. A judge of the Superior Court denied the plaintiff's request for a preliminary injunction but subsequently judgment was entered for the plaintiff, declaring the challenged ordinance invalid.

CHR is the sole general partner of Chestnut Hill Towers Realty Company, which owns a building in Newton containing 422 dwelling units. The building was constructed originally as rental housing. On March 31, 1981, however, CHR filed a master condominium deed for the building[2] and, since July of that year, has been in the process of attempting to sell the units as condominiums. The board of aldermen (board) of the city adopted Ordinance No. R-166 (R-166) on August 17, 1981. Units in the plaintiff's building which were not sold by August 28, 1981, the effective date of the ordinance, purportedly are subject to its provisions.

The ordinance requires a property owner who wishes to convert an occupied rental housing unit[3] to a condominium which is to be owner-occupied to file an application for a conversion permit with the board. Tenants must be given thirty to sixty days' notice of the filing of an application. They must also be offered a right of first refusal to purchase the unit, at a price which must remain fixed during the pendency of the application and for at least ninety days after it is filed. The property owner must file an "adequate tenant relocation plan" as a precondition to obtaining a conversion permit. The "adequacy" of such a plan is to be determined by the board after a public hearing.

If the board allows a permit to issue, the property owner cannot regain possession of the unit for two years from the date of issuance of that permit, regardless of the terms of the

---

our discussion of the ordinance as it bears on condominiums applies equally to cooperatives.

[2] See G. L. c. 183A, § 8.

[3] The permit requirement applies also to unoccupied rental housing units "if 25 % or more of the rental housing units in the building are unoccupied at the time the master deed was recorded." R-166, § 2 (1) (A). The ordinance does not apply, however, to buildings containing five or fewer dwelling units. See id. at § 1.

tenancy, unless there is a material breach of those terms. In cases in which the board, on a tenant's application, finds a hardship to exist with respect to that tenant, the ordinance extends this period to five years from the date of issuance. During the two (or five) year period, the property owner is prohibited from increasing the tenant's rent to an "unconscionable" level with the intent of "facilitating the conversion" of the unit to condominium use. The property owner is also prohibited from engaging in "harassment" of the tenant "in order to effectuate in any way the vacancy of a rental housing unit." Harassment, under the ordinance, includes bringing an action to evict a tenant "without cause." Any action brought to evict a tenant, except for nonpayment of rent, is presumed to be "without cause" in the absence of evidence to the contrary.

If a property owner increases a tenant's rent after filing a condominium master deed, the ordinance provides that it shall be an absolute defense to an action to recover possession of the unit for nonpayment of such an increase if a judge finds that the amount of the increase was "unconscionable" and the property owner intended, by increasing the rent, to facilitate conversion of the unit to condominium ownership. For violation of its provisions R-166 also imposes monetary penalties and directs city officials to institute appropriate enforcement action in the courts.

On August 24, 1981, four days before the effective date of the ordinance, CHR filed its complaint. The parties eventually filed cross motions for judgment on the pleadings. Treating these as motions for summary judgment, a judge of the Superior Court granted CHR's motion, and denied that of the city, on December 21, 1981. The city appealed. We took the case on the parties' joint request for direct appellate review.

The primary issue presented by this case is whether the city had the authority, pursuant to § 6 of the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth, replacing art. 2 of those Amendments (HRA), to enact the challenged ordinance. That sec-

tion reads, in pertinent part, as follows: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved by the general court by section eight [of the HRA], and which is not denied, either expressly or by clear implication, to the city or town by its charter." CHR contends, and the Superior Court judge held, that one of the limitations on the powers granted the city, contained in § 7 of the HRA, precludes the city from enacting R-166. The pertinent part of § 7 reads as follows: "Nothing in this article shall be deemed to grant to any city or town the power . . . (5) to enact private or civil law governing civil relationships except as an incident to an exercise of an independent municipal power . . . ."

1. *Private or civil law governing civil relationships.* The city's arguments to the contrary notwithstanding, R-166 is a "private or civil law governing civil relationships." As this court stated in *Marshal House, Inc.* v. *Rent Review & Grievance Bd.*, 357 Mass. 709, 716 (1970), that term "is broad enough to include law controlling ordinary and usual relationships between landlords and tenants." The city asserts that its ordinance does not "govern" the landlord-tenant relationship, but merely "interfere[s] . . . on a temporary and limited basis" with that relationship. On the contrary, R-166, like the rent control by-law struck down in *Marshal House,* "affords to the board power in effect to remake, in important respects, the parties' contract creating a tenancy." *Id.* As the Superior Court judge noted, the requirements of R-166 "impinge not only on the landlord-tenant relationship, but also on the owner's freedom of choice as to the buyers for converted units. It requires extension of the lease for substantial periods; restricts evictions; mandates a right of purchase in the tenant; and imposes other duties on a landlord seeking to convert rental housing units into condominiums." It is not only difficult, but impossible, to distinguish in any meaningful way the changes the city proposed

to make in the landlord-tenant relationship by enacting R-166, from those methods of attaining the objectives of the by-law challenged in *Marshal House,* which this court found to be "predominantly civil in character and directly affect[ing] a civil relationship." *Id.* at 717.

2. *Incident to the exercise of an independent municipal power.* Since R-166 is a law predominantly civil in nature and directly affecting a civil relationship, it may be found valid only if enacted "as an incident to an exercise of an independent municipal power." HRA § 7 (5). The city asserts that the ordinance may be upheld as incident to the exercise of either its police or its zoning powers. We disagree.

As this court stated in *Marshal House,* § 6 of the HRA undoubtedly grants municipalities "broad powers to adopt by-laws for the protection of the public health, morals, safety, and general welfare, of a type often referred to as the 'police' power. We assume that these broad powers would permit adopting a by-law requiring landlords (so far as legislation does not control the matter) to take particular precautions to protect tenants against injury from fire, badly lighted common passageways, and similar hazards." *Id.* at 717-718. It noted that "[r]ent control, in a general sense, is for the purpose of providing shelter at reasonable cost for members of the public, a matter comprised within the broad concept of the public welfare." *Id.* at 718. Here, also, the defendant argues that the challenged ordinance is intended to further the public welfare, in this case "[b]y providing an orderly and humanitarian transition from rental housing to condominium ownership."[4]

---

[4] See *Grace* v. *Brookline,* 379 Mass. 43, 56 (1979) ("The import of these cases [cited] is that a shortage of housing threatens the public interest, and that legislation which preserves the rental market for low, moderate, and fixed income persons promotes health, safety, and welfare generally"). In that case, this court held that a by-law amendment regulating the conversion to condominiums of housing units previously subject to rent control, which had been enacted pursuant to a special law applicable only to Brookline (St. 1970, c. 843), was valid as authorized by, and consistent with, that special law. See also *Flynn* v. *Cambridge,* 383 Mass. 152 (1981).

In *Marshal House,* however, the court further stated that the language of HRA § 7 (5), required "viewing *separately* the various component powers making up the broad police power, with the consequence that a municipal civil law regulating a civil relationship is permissible (without prior legislative authorization) only as an incident to the exercise of some independent, *individual* component of the municipal police power" (emphasis supplied). *Id.* That R-166 may have been enacted in furtherance of the public welfare, therefore, does not end our inquiry. We must ascertain whether there exists some individual component of the city's police power which authorizes its enactment of R-166, and to which that ordinance's effects on civil relationships may fairly be said to be incidental.

The city relies on its zoning power as the individual component of its police power which authorizes enactment of R-166. This court has held that "the zoning power is one of a city's . . . independent municipal powers included in [HRA] § 6's broad grant of powers to adopt ordinances . . . for the protection of the public health, safety, and general welfare." *Board of Appeals of Hanover* v. *Housing Appeals Comm.,* 363 Mass. 339, 359 (1973). See *John Donnelly & Sons* v. *Outdoor Advertising Bd.,* 369 Mass. 206, 210 n.8 (1975); *Collura* v. *Arlington,* 367 Mass. 881, 885 n.3 (1975). The question dispositive of this appeal, therefore, is whether R-166 could be found valid as an exercise of the zoning power granted the city by HRA § 6.[5] We conclude that it cannot.

A "fundamental principle of zoning [is that] it deals basically with the use, without regard to the ownership, of the property involved or who may be the operator of the use." 1 A. Rathkopf, Zoning and Planning § 1.04, at 1-21 (4th ed. 1982). The city concedes, as it must, that "a building composed [of] condominium units does not 'use' the land it

---

[5] The ordinance challenged in this case was not enacted pursuant to the provisions of G. L. c. 40A, the primary source of the power of municipalities to regulate land use.

sits upon any differently than an identical building containing rental units." See Note, Municipal Regulation of Condominium Conversions in California, 53 S. Cal. L. Rev. 225, 243 (1979) (studies by United States Department of Housing and Urban Development and others "all indicate that the differences between apartment buildings . . . are not significant and do not affect land use"); 1 T. Matthews & B. Matthews, Municipal Ordinances § 21.06, at 117 (1972) ("condominium type of ownership . . . has no effect on zoning").[6]

The city's citing of *Goldman* v. *Dennis*, 375 Mass. 197 (1978), as support for its assertion that its zoning powers extend to enacting ordinances regulating condominium conversion is inapposite. In that case, this court upheld a zoning by-law requiring owners of "cottage colonies" to conform to certain minimum lot size requirements as a precondition to obtaining permission to convert individual cottages to condominium units. Cottage colonies were prohibited in all zones of the town, except as nonconforming uses, and the court concluded that "[t]he legislative body of the town could reasonably believe that conversion of a cottage colony to single family use would encourage expansion of [nonconforming] use beyond the short summer season." *Id.* at 199. As a result, "[a]lthough the limitation [contained in the challenged by-law] is phrased in terms of ownership," the court found the by-law "valid as a regulation of 'change of use.'" *Id.* Here, the challenged ordinance affects not the use, but only the ownership of the property in question. Hence, R-166 is not a valid zoning ordinance.[7]

---

[6] See also *Maplewood Village Tenants Ass'n* v. *Maplewood Village*, 116 N.J. Super. 372, 377 (1971), in which the court held, under a State statute requiring all planning, subdivision, and zoning laws, ordinances, and regulations to be "construed and applied with reference to the nature and use of the condominium without regard to the form of ownership," that "[p]lanning controls . . . cannot be employed by a municipality to exclude condominiums or discriminate against the condominium form of ownership, for it is use rather than form of ownership that is the proper concern and focus of zoning and planning regulation."

[7] We need not further consider the city's argument that R-166 should be found valid as a zoning ordinance in a "phased development format." In

The city also argues that R-166 should be found valid as an exercise of an independent municipal power to regulate land use in ways that would not be possible under its zoning power. It cites *Lovequist* v. *Conservation Comm'n of Dennis*, 379 Mass. 7 (1979), for the proposition that regulations which do not deal with the more traditional aspects of zoning (i.e., regulation of density, bulk, and the like) need not be adopted in accordance with the provisions of G. L. c. 40A, The Zoning Enabling Act. In that case, the court upheld a local wetlands protection by-law allowing the conservation commission of the town of Dennis to deny permission for any removal, dredging, alteration, or filling of land in the town, subject to the Commonwealth's Wetlands Protection Act, G. L. c. 131, § 40. *Id.* at 10 n.4. While the court did state that it did not consider "all ordinances or by-laws that regulate land use to be zoning laws," *id.* at 12-13, it upheld the challenged by-law because such by-laws are expressly permitted by a statute (G. L. c. 40, § 21 [17]). The *Lovequist* case did not involve a by-law governing civil relationships that was upheld because it had been enacted as an incident to the exercise of an independent municipal power. See *id.*

We conclude that if the city wishes to regulate the conversion of rental units to condominium ownership it must seek from the Legislature a grant of authority to do so.[8]

*Judgment affirmed.*

---

any event, the two cases cited by the city in support of its contention that ordinances controlling the rate of development in a municipality are permissible both involved by-laws enacted pursuant to the zoning powers granted to municipalities by G. L. c. 40A. *Sturges* v. *Chilmark*, 380 Mass. 246 (1980). *Collura* v. *Arlington*, 367 Mass. 881 (1975). The ordinance challenged in the instant case was not so enacted.

[8] We note that with the approval of the mayor and board of aldermen of the city of Newton a bill was introduced in the Legislature in June, 1981, which, if enacted, apparently would permit the city to attain the ends it sought to achieve by enacting R-166. See 1981 House Doc. No. 7037.