CHARLES W. SULLIVAN & another vs. BOARD OF APPEALS
OF HARWICH & others.

Barnstable.   October 5, 1982. — February 11, 1983.

Present: HALE, C.J., ARMSTRONG, & SMITH, JJ.

*Real Property,* Condominium. *Zoning,* Condominium, Nonconforming
use or structure.

A town's zoning by-law which was silent on the subject of condominium
conversion of seasonal rental properties did not preclude the owners of
two two-family dwellings, existing as a valid nonconforming use in a
single family residence district and used primarily for summer rental,
from transferring the property into condominium ownership or re-
quire the owners to obtain a special permit for that purpose. [287-291]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 23, 1980.

The case was heard by *Travers,* J.

*Kevin M. Keating* for the plaintiffs.

*John S. Leonard* for George A. McLaughlin, Sr., ex-
ecutor, & others, interveners.

*James M. Falla,* for Board of Appeals of Harwich,
submitted a brief.

ARMSTRONG, J.   The plaintiffs are the owners of two two-
family dwellings in Harwich which have been used primari-
ly for rental during the four summer months.   The dwel-
lings, lawful when constructed, see *McLaughlin* v. *Board of
Appeals of Harwich,* 359 Mass. 416 (1971), are valid non-
conforming uses in what is now a single-family residence
district.   The plaintiffs applied to the building inspector for
permission to transfer the units into condominium owner-
ship and appealed to the board of appeals from the building
inspector's adverse decision.   From the board the plaintiffs
sought either a determination that the zoning by-law did

not restrict conversion to condominiums or, in the alternative, a special permit under a section of the zoning by-law which authorized "pre-existing non-conforming structures or uses [to be] changed, extended or altered on special permit" if the board should find that the changed structure or use "shall not be substantially more detrimental to the neighborhood than the existing non-conforming use." The board denied the first alternative, apparently (judging from the arguments addressed to them and their decision) for the reason that condominiums are a multi-family use not listed in the table of uses permitted in the district in question; and it denied a special permit for the reasons that, since no "sound plan of resident management [or] plan for upkeep [was made] available for review, detriment to the neighborhood could not be ruled out," and "the available square footage [32,500 square feet] raised a serious question of adequate open area for year-round occupancy." On appeal under G. L. c. 40A, § 17, a judge upheld the board's decision, and the case is before us on the plaintiffs' appeal from the ensuing judgment.

*CHR Gen., Inc.* v. *Newton,* 387 Mass. 351, 356-357 (1982), an opinion issued after the trial judge's decision in this case, invalidated Newton's condominium conversion ordinance as an impermissible exercise of the city's authority under The Zoning Enabling Act, holding that a municipality's zoning power is confined to regulating the use of property rather than its form of ownership. The change proposed by the plaintiffs here does not, on its face, go beyond a change in the form of ownership. They do not propose structural change other than the installation of separate water and gas meters, which are permissible as of right, we think, under the principles set forth in *Crawford* v. *Building Inspector of Barnstable,* 356 Mass. 174, 176-178 (1969), and *Berliner* v. *Feldman,* 363 Mass. 767, 775 (1973). Nor do they propose, at least expressly, a change of use from summer to year-round occupancy.[1] The board and the judge

---

[1] Contrast *Walker* v. *Board of Appeals of Harwich,* 388 Mass. 42 (1983), decided shortly before the date of this opinion. In the *Walker*

both found, however, that submitting the units to the condominium statute is likely to lead to occupancy extending beyond the limits of the summer tourist season.

There is arguably a qualitative difference between summer rental units and individually owned condominium units. In *Goldman* v. *Dennis*, 375 Mass. 197 (1978), the Supreme Judicial Court upheld the validity of a zoning bylaw which explicitly prohibited making condominiums of existing nonconforming cottage colonies if the land on which the cottages were located did not meet the minimum requirements specified in the zoning by-law for "open space village development." The court held as follows: "The legislative body of the town could reasonably believe that conversion of a cottage colony to single family use under condominium type ownership would encourage expansion of use beyond the short summer season. In *McAleer* v. *Board of Appeals of Barnstable*, 361 Mass. 317, 323 (1972), we recognized that a town could inhibit 'expansion of a nonconforming use from seasonal to a year-round basis,' although we found the by-law there in question to be broad enough to permit the increase. See *Berliner* v. *Feldman*, [*supra* at] 776-777; *Morin* v. *Board of Appeals of Leominster*, 352 Mass. 620, 623-624 (1967). Here the by-law is explicit in its limitation of the expansion of a nonconforming use. Although the limitation is phrased in terms of the type of ownership, we think it is valid as a regulation of 'change of use.' See *Powers* v. *Building Inspector of Barnstable*, 363 Mass. 648, 652-658 (1973)." *Goldman* v. *Dennis*, 375 Mass. at 199.

It is generally accepted that one may not as of right alter the structure or extend the area devoted to a nonconforming use but may increase the amount of use within the same

case the applicants for a special permit proposed substantial structural alterations to their motel complex and an expansion to year-round occupancy in addition to the condominium form of ownership. Because the structural changes necessitated the obtaining of a special permit, there was no occasion in the *Walker* case for the court to consider the necessity of a special permit for condominium conversion alone.

structure or area. See *Billerica* v. *Quinn*, 320 Mass. 687, 689 (1947); *Powers* v. *Building Inspector of Barnstable*, 363 Mass. at 652-653. Cases involving the lawfulness of a temporal extension of a nonconforming use have focused on the degree of specificity with which the zoning by-law prohibits the particular extension and, absent specific mention therein, on the general permissiveness of the by-law towards extensions of nonconforming uses. In *McAleer* v. *Board of Appeals of Barnstable, supra*, it was held that a by-law which authorized alterations or enlargements of nonconforming buildings and extensions of nonconforming uses by a special permit did not prohibit the conversion of a restaurant-cocktail lounge facility from seasonal to year-round use, although the court observed (361 Mass. at 323) that it would probably have reached the opposite result if Barnstable's nonconforming use by-law had been similar to that considered in *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207 (1946) (express prohibition of any change, enlargement, or extension of a nonconforming use). In *Berliner* v. *Feldman*, 363 Mass. at 776-777, an extension from seasonal to year-round use was held not to violate a nonconforming use by-law which "express[ed] the same 'permissive spirit' with respect to tolerance of nonconforming uses and their expansion as did the *McAleer* by-law." In *Goldman* v. *Dennis*, 375 Mass. at 199, the court, as has been seen, put emphasis on the Dennis by-law's express prohibition against conversion of nonconforming cottage colonies to condominium ownership in the circumstances there extant, in which respect the Dennis by-law is functionally analogous to the by-law considered in *Inspector of Bldgs. of Burlington* v. *Murphy, supra*.

*Goldman* v. *Dennis*, relied on by the board, would be more in point if Harwich had a zoning by-law regulating the conversion to condominiums of summer rental properties. The Harwich by-law is silent on the subject, see *Walker* v. *Board of Appeals of Harwich*, 388 Mass. 42, 53-54 (1983), and its general by-law governing extensions and alterations of nonconforming uses is the permissive type

of by-law, similar in substance to those in the *McAleer* and *Berliner* cases (in that it sanctions extensions and alterations by special permit) and dissimilar to those in *Inspector of Bldgs. of Burlington* v. *Murphy* (a general nonconforming use provision allowing no leeway for extension) and *Goldman* v. *Dennis* (a condominium-conversion restriction allowing no scope for discretion in application).[2] At least in the absence of a by-law more directly addressing the arguably special problems of condominium conversion of seasonal rental properties, we apply the general principles that a nonconforming use is not extinguished by a transfer of property, *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 221 (1982), and that a change in the form of ownership does not by itself effect a change of use. *Id.* at 222. *CHR Gen., Inc.* v. *Newton*, 387 Mass. at 356-357. If the use of the plaintiffs' two two-family dwellings in the past has resulted in a nonconforming use limited in scope to seasonal occupancy, a transfer of ownership will not by itself effect an extension of the permitted nonconforming use to year-round occupancy.

Because a special permit was unnecessary to enable the plaintiffs to sell the units in condominium form, the board did not exceed its authority in denying the application; and, as that was the operative part of the board's decision, the judge correctly affirmed the decision. The plaintiffs have, however, from the outset been seeking, in essence, declaratory relief establishing that the Harwich zoning by-law as

---

[2] It may be contended that a municipal by-law of the restrictive type appearing in *Inspector of Bldgs. of Burlington* v. *Murphy* would be inconsistent with the second sentence of the first paragraph of G. L. c. 40A, § 6, as amended through St. 1979, c. 106. The power of a municipality strictly to confine changes in nonconforming uses appeared more clearly under the predecessor statute, G. L. c. 40A, § 5, as in effect prior to St. 1975, c. 808, but it is quite possible that the second sentence of the new § 6, first par., is to be read as authorizing municipalities to provide for extensions or alterations of nonconforming uses by special permit while not requiring them so to provide. The new section was so read in Healy, Massachusetts Zoning Practice Under the Amended Zoning Enabling Act, 64 Mass. Law Rev. 157, 161 (1979).

presently drafted does not preclude them from transferring their properties into condominium ownership or require them to obtain a special permit for that purpose. The issue has been fully litigated and, although the case is styled an appeal under G. L. c. 40A, § 17, it is appropriate that the judgment should be amended to contain a declaration to that effect. As so amended, the judgment is affirmed.

*So ordered.*