JOAN C. BANNERMAN, trustee,[1] & others[2] vs. CITY OF
FALL RIVER.

Bristol. December 6, 1983. — March 1, 1984.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Municipal Corporations*, Home rule, Police power, Condominiums.
*Constitutional Law*, Home Rule Amendment. *Real Property*, Condo-
minium.

An ordinance purporting to regulate the conversion of rental apartments
to condominium units was a "private or civil law governing civil rela-
tionships" between landlords and tenants, and thus was not a valid ex-
ercise of the home rule powers secured to a city by art. 89 of the
Amendments to the Massachusetts Constitution. [330-332]
A city lacked power to adopt an ordinance regulating conversion of rental
apartments to condominium units as an incident to the exercise of its
municipal power to operate a water and sewer system, to regulate
traffic and streets, or to further the public welfare. [332]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 30, 1982.

The case was heard by *Ponte*, J., on a motion for sum-
mary judgment.

After review was sought in the Appeals Court, the
Supreme Judicial Court ordered direct appellate review on
its own initiative.

*John R. Mitchell*, Assistant Corporation Counsel, for the
defendant.

*Duncan S. Payne* for the plaintiffs.

LYNCH, J. The plaintiffs challenged an ordinance
adopted by the city of Fall River (city) which purports to
regulate the conversion of rental apartments to condomin-

---

[1] Trustee of Waterview Heights Trust.

[2] Sidney J. Rosenthal and Myron C. Roberts, partners of Waterview
Heights Associates; and WHC Corporation.

ium units. A judge of the Superior Court ruled that the ordinance was invalid and granted the plaintiffs' motion for summary judgment. We affirm.

On May 19, 1982, chapter 13A of the Revised Ordinances of the city (ordinance) became effective.[3] The ordinance created a Housing Conversion Board (board), which was authorized to issue or deny permits for the removal of multifamily housing from rental use. By this ordinance, no multifamily rental housing may be converted without a permit. Factors for the board to consider in the issuance or denial of a permit are "the potential effects of said conversion from rental housing use on the supply of rental housing and the stability of neighborhoods in the City." Chapter 13A, § 3.

---

[3] Chapter 13A provides:

"*Section 1*: Housing Conversion Board

There shall be created within the City of Fall River, a Housing Conversion Board consisting of three (3) persons appointed by the Mayor, who shall serve for a period of three (3) years.

"*Section 2*: Purpose

The purpose of the Housing Conversion Board is to grant or deny permits after hearing, and may issue, order and promulgate regulations to effectuate the purposes of this by-law, and to establish procedures for applications, notices and hearings regarding 'multi-family conversions to condominiums.

"*Section 3*: Conversion Permit Required

The provisions of General Laws, Chapter 30A shall apply to the Housing Conversion Board as if the same were an agency of the Commonwealth of Massachusetts. No owners of multi-family dwellings or other person shall remove from rental use any rental unit in a residential complex of twelve (12) or more residential housing units which is not owned or operated by the United States, Commonwealth of Massachusetts or any other sub-division, without first having obtained from the Housing Conversion Board a conversion permit authorizing such removal from rental use of said rental unit. In deciding whether or not to grant conversion permits, under this Chapter, the Housing Conversion Board shall consider the potential effects of said conversion from rental housing use on the supply of rental housing and the stability of neighborhoods in the City.

"*Section 4*: Penalty

Violation of this Chapter shall be an unlawful act for any person who materially participates in the same and whosoever violates this Chapter may be punished by a fine of not more than Fifty ($50.00) Dollars, and each day of continued unlawful removal for rental of such unit or of continued disregard or contravention of each order shall constitute a separate violation."

The plaintiffs are the trustee and the partners of Water-view Heights Associates and WHC Corporation. On or about April 1, 1982, WHC entered into an agreement to purchase from Waterview Heights Associates a residential complex consisting of sixty-one apartments. Its intent was to convert these apartments to condominium units.

The plaintiffs argue, and the judge below ruled, that the ordinance is invalid because it is a private or civil law governing civil relationships, thus violating § 7 (5) of the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth, replacing art. 2 of those Amendments (HRA);[4] it is not incident to the exercise of an independent municipal power; and it is not specifically authorized by enabling legislation.[5] The judge also ruled that the ordinance was unconstitutionally vague. The city contends that the ordinance does not govern civil relationships, and is within the powers reserved to local governments by the HRA, § 6. In addition, the city claims that, even if the ordinance does govern civil relationships, it was enacted incident to the exercise of independent municipal powers, specifically the power to operate the water and sewer system, the power to maintain streets and regulate the traffic on them, and general power to protect the public health. We agree with the judge below that the ordinance is not within the powers reserved to the city by the HRA; thus we do not reach the question of vagueness.

1. *Private or civil law governing private relationships.* An ordinance which affects the landlord-tenant relationship is a "private or civil law governing civil relationships." *CHR*

---

[4] The HRA, § 7 (5), reads in pertinent part: "Nothing in this article shall be deemed to grant to any city or town the power to . . . (5) enact private or civil law governing civil relationships except as an incident to an exercise of an independent municipal power . . . ."

[5] The Legislature recently enacted St. 1983, c. 527, an act enabling any city or town in the Commonwealth to regulate the conversion of rental property to condominium units by ordinance or by-law. There was no Statewide enabling legislation in effect at the time the ordinance was passed. Whether the ordinance would be found valid if adopted pursuant to the new legislation is not before us.

*Gen., Inc.,* v. *Newton,* 387 Mass. 351, 354 (1982); *Marshal House, Inc.* v. *Rent Review & Grievance Bd.,* 357 Mass. 709, 716 (1970). As did the regulations in those two decisions the ordinance in question interferes with the landlord-tenant relationship in that it regulates and restricts the landlord's ability to terminate a lease and remove his property from the rental market in order to sell it. Cf. *Flynn* v. *Cambridge,* 383 Mass. 152 (1981); *Grace* v. *Brookline,* 379 Mass. 43, 56 (1979) (regulation governing conversion of rental housing units to condominium units valid when adopted pursuant to special act).

The city attempts to distinguish the ordinance from the condominium conversion law found invalid in *CHR Gen., Inc.* v. *Newton, supra,* because, as it argues, the Newton ordinance was very detailed and placed specific restrictions on the landlord's relation with his tenant. The Fall River ordinance simply requires the issuance of a permit before property may be removed from the rental market.[6] The ordinance here is more simplistic than the ones construed in *Marshal House, Inc.* and *CHR Gen., Inc.* Simple as it is, however, it unavoidably affects the relationship between landlord and tenant. It is not analogous to the ordinance creating a human rights commission in *Bloom* v. *Worcester,* 363 Mass. 136 (1973). The ordinance in that decision was found not to violate HRA, § 7 (5), because "[n]o new rights or obligations between persons are created by the ordinance; no existing rights or obligations between persons are modified or abolished." *Id.* at 146. The same cannot be said of the ordinance here, which permits a property owner to convert his rental property to condominium units only with the approval of the board. Despite its simplicity, therefore, this ordinance cannot be distinguished from the

---

[6] The ordinance in *CHR Gen., Inc.* v. *Newton, supra* at 352, required that tenants be given the right of first refusal to purchase their unit and that the property owner submit an adequate tenant relocation plan subject to the approval of the board of aldermen. The ordinance also provided that the owner could not regain possession for two years from the date of issuance of the permit, five years if the tenant demonstrated hardship.

regulations in *Marshal House, Inc.* and *CHR Gen., Inc.*; it is "predominantly civil in character and directly affect[s] a civil relationship." *Marshal House, Inc., supra* at 717.

2. *Incident to the exercise of an independent municipal power.* An ordinance which governs a civil relationship may be valid despite the proscription of § 7 (5) if it is "incident to an exercise of an independent municipal power." HRA § 7 (5). The city does not claim that the ordinance should be upheld as incident to the exercise of its zoning power (see *CHR Gen., Inc.* v. *Newton, supra* at 355), but claims the ordinance is valid as incident to its power to operate the water and sewer system, its power to regulate traffic and city streets, and its general supervisory power over public health. Furtherance of the general public welfare is insufficient justification for an ordinance which otherwise violates § 7 (5) because such an ordinance would not be based on an "individual component of the [city's] police power." *Marshal House, Inc., supra* at 718. Nor can the ordinance be justified as incident to either of the other two powers enumerated by the city. Whether a particular unit of housing is owned or rented would affect neither the water and sewer system nor the traffic patterns of the neighborhood. Cf. *CHR Gen., Inc.* v. *Newton, supra* at 356-357 (conversion ordinance not valid as exercise of city's zoning power because there is no difference in use between condominium units and apartments). The holding in *Goldman* v. *Dennis,* 375 Mass. 197 (1978), that a conversion by-law was justified by the town's zoning power, is not persuasive as applied to this case. In that decision, conversion would turn a "cottage colony" rented out only during the summer season into year-round housing. See *CHR Gen., Inc.* v. *Newton, supra* at 357. There is no evidence that apartment conversion in Fall River would have an effect of this kind. There is no independent power by which the city can justify the ordinance.

For the foregoing reasons, we conclude that the ordinance is invalid.

*Judgment affirmed.*