HOWARD L. GAMSEY vs. BUILDING INSPECTOR OF
CHATHAM & another.[1]

No. 89-P-368.

Suffolk. January 16, 1990. - May 25, 1990.

Present: DREBEN, SMITH, & FINE, JJ.

*Land Court*, Jurisdiction. *Real Property*, Condominium. *Zoning*, Condo-
minium, Nonconforming use or structure, Validity.

A landowner's action challenging the validity of a town zoning by-law pro-
vision as applied to the proposed conversion of his premises to condo-
minium ownership was properly before the Land Court under G. L.
c. 240, § 14A. [615-616]

A proposed conversion of resort motel premises to condominium ownership
entailed, in the circumstances, a change "in the quality or character, as
well as the degree, of use" and thus was subject to a town by-law provi-
sion requiring that the owner seek a special permit to effect the conver-
sion. [616-619]

CIVIL ACTION commenced in the Land Court Department
on August 14, 1987.

The case was heard by *Robert V. Cauchon*, J.

*Bruce P. Gilmore*, Town Counsel, for the defendants.

*John P. McCormick* for the plaintiff.

DREBEN, J. The plaintiff owns a resort motel in Chatham
which he intends to convert to condominium units.[2] After the
building inspector and town counsel informed him that

---

[1] Town of Chatham. The plaintiff gave the Commonwealth an
opportunity to intervene pursuant to Mass.R.Civ.P. 24(d), 365 Mass. 770
(1974), but the docket does not indicate that an appearance was filed by
the Commonwealth.

[2] The resort motel has operated as a preexisting nonconforming use since
1984, when Chatham rezoned the district in which it is located from a
limited business to a residential district.

§ 5.97[3] of the zoning by-law of Chatham requires a special permit to effect such a conversion, the plaintiff, without applying for a special permit, brought this action under G. L. c. 240, § 14A, and under G. L. c. 231A seeking a declaration that the by-law provision was invalid.[4] A judge of the Land Court held, contrary to the town's contentions, that the plaintiff was not required to exhaust his administrative remedies before bringing an action under G. L. c. 240, § 14A, and that the town could not require the plaintiff to obtain a special permit. He ruled "that insofar as the Plaintiff's proposed conversion contemplates no structural change and will restrict use of the units to their present seasonal use, the proposal is not a change in use, but merely a change of ownership."

We agree that the action was properly brought under G. L. c. 240, § 14A, but conclude that the by-law's application to the plaintiff is valid and that he must seek a special permit.

1. The town's procedural claim is that G. L. c. 231A requires the plaintiff to exhaust his administrative remedies. The plaintiff, however, brought this action under both G. L. c. 231A and G. L. c. 240, § 14A. The latter statute, set forth in the margin,[5] "specifically provides landowners

---

[3]In relevant part, § 5.97 of the Chatham by-law, as quoted by the judge, provides: "An existing motel. . . . may not be converted to multiple family dwelling use under condominium . . . type of ownership, except upon the issuance of a Special Permit by the Zoning Board of Appeals . . . . and the sewage disposal system [of such structure] shall comply with Title V of the State Environmental Code and the Health Regulations of the Town of Chatham. . . ."

[4]Because of limitations placed by the Attorney General in approving the by-law, the parties treat the controversy as relating only to the units in the resort which have full kitchen facilities.

[5]That section, as amended through St. 1977, c. 829, § 14, provides:

"The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated, which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of pre-

with a cause of action [against a municipality] to determine 'the *validity of* . . . or . . . the *extent* to which any zoning ordinance, by-law or regulation *affects*' a proposed use of their property (emphasis supplied)." *Banquer Realty Co.* v. *Acting Bldg. Commr. of Boston*, 389 Mass. 565, 570 (1983). "In the case of G. L. c. 240, § 14A, the Legislature has determined that resort to local zoning procedures is not a necessary prerequisite to obtaining judicial relief." *Id.* at 573. Since the matter was properly before the Land Court under c. 240, § 14A, we follow the course taken by the trial judge and refrain from discussing the requirements of exhaustion under G. L. c. 231A. Contrast *Clark & Clark Hotel Corp.* v. *Building Inspector of Falmouth*, 20 Mass. App. Ct. 206 (1985).

2. Turning to the merits — it is fundamental that zoning is concerned with the use, without regard to ownership, of the property involved. *CHR General, Inc.* v. *Newton*, 387 Mass. 351, 356 (1982). In that case, and also in *Bannerman* v. *Fall River*, 391 Mass. 328 (1984), the Supreme Judicial Court held that ordinances which, under a municipality's zoning powers, attempted to regulate the conversion of rental apartments to condominium units were invalid. The basis for the decisions was that a building composed of condominium units does not *use* the land upon which it sits any differently from a building containing apartments. In both opinions the court distinguished *Goldman* v. *Dennis*, 375 Mass. 197 (1978), the case most heavily relied upon here by the town.

---

sent or future structures thereon, including alterations or repairs, or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition. The right to file and prosecute such a petition shall not be affected by the fact that no permit or license to erect structures or to alter, improve or repair existing structures on such land has been applied for, nor by the fact that no architects' plans or drawings for such erection, alteration, improvement or repair have been prepared. The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not."

In *Goldman,* the tracts in question were "cottage colonies" which were prohibited in all zones of the town, except as nonconforming uses. In upholding a by-law which provided that an existing nonconforming cottage colony may not be converted "to single family use under condominium type ownership" unless the lot on which each building is located meets certain minimum requirements, the Supreme Judicial Court concluded, at 199, that "[t]he legislative body of the town could reasonably believe that conversion of a cottage colony to single family use under condominium type ownership would encourage expansion of use beyond the short summer season." Pointing out that the "by-law is explicit in its limitation of the expansion of a nonconforming use, the court held that although "the limitation is phrased in terms of the type of ownership, we think it is valid as a regulation of 'change of use'." *Ibid.*

In *Sullivan* v. *Board of Appeals of Harwich,* 15 Mass. App. Ct. 286 (1983), this court held, at 290, that the Harwich zoning by-law did not prevent the owners of two, two-family dwellings, used primarily as summer rental units, from converting the units to condominium ownership. The houses, lawful when constructed, were valid nonconforming uses in what had become a single family residence district. Crucial to the court's reasoning, allowing the conversion, were the silence of the Harwich zoning by-law on the subject of the conversion of summer rental properties to condominiums and the permissive nature of the general by-law governing extensions and alterations of nonconforming uses. Recognizing that "there is arguably a qualitative difference between summer rental units and individually owned condominium units," we concluded in *Sullivan* that "in the absence of a by-law more directly addressing the arguably special problems of condominium conversion of seasonal rental properties, we apply the general principles that a nonconforming use is not extinguished by a transfer of property . . . and that a change in the form of ownership does not by itself effect a change of use." *Sullivan,* 15 Mass. App. Ct. at 288, 290.

In contrast to the silence in the zoning by-law of *Sullivan*, the Chatham by-law, as was the provision in *Goldman*, is explicit. It regulates the conversion of public lodgings to condominiums and specifically requires compliance with sewage provisions. Other sections of the Chatham by-law also show concern with such problems.[6] Indeed, the evidence in this case bears out the reasonableness of the legislative determination that there are likely to be qualitative differences between a public lodging use, which is usually transient and sporadic and a condominium use which is more steady and often long term.[7]

The plaintiff's business records from 1984 through 1987 showed the following monthly occupancy levels: 20% in May; 20% in June; 70% in July; 80% in August; 50% in September; and 20% in October. Although the plaintiff voluntarily agreed to limit the use of his converted units to the existing six-month season, he had no proposal to prevent purchasers from occupying their condominium units continuously from May 1st to October 31st. He also had no plan to prohibit condominium owners from installing washing machines or other large appliances which would increase the level of water usage and waste disposal.[8] A conversion from motel to condominium use may well entail more than a "paper" conversion changing the form of ownership without altering the use of the land. See *CHR General, Inc.* v. *Newton,*

---

[6] Section VII, subsection 7, of the by-law regulates the conversion of cottage colonies to condominiums, and subsection 8 regulates the conversion of nonconforming seasonal dwellings to year-round use. Each of these sections, as the section construed herein, requires the sewage disposal system to comply with the State Environmental Code and the town's health regulations.

[7] While we do not take issue with the judge's subsidiary findings of fact, we differ with his decision on the mixed question of law and fact that there was not here a change in use, but only a change in ownership.

[8] It was undisputed that Chatham's drinking water comes from a body of water under the soil and that the sewage disposal system goes into the ground. Thus, it may be inferred, as the town claims, that the extent and regulation of sewage is important to maintaining the water supply to the town's inhabitants.

387 Mass. at 356-357; *Bannerman* v. *Fall River*, 391 Mass. at 332.

A municipality may adopt zoning provisions to deal with a variety of matters, including adequate provision for water and sewage, the conservation of natural resources, and the prevention of environmental pollution. *Sturges* v. *Chilmark*, 380 Mass. 246, 253 (1980). We hold that the legislative body of Chatham could reasonably determine that the conversion of public lodgings to condominiums might constitute a change "in the quality or character, as well as the degree, of use," see *Green* v. *Board of Appeals of Provincetown*, 26 Mass. App. Ct. 469, 472 (1988) (reversed on other grounds, 404 Mass. 571 [1989]), and that such conversion might increase the burden on the town's sewage disposal system and should be subject to regulation under the zoning law.

It is well settled that every presumption must be made in favor of the validity of a zoning by-law, and great weight is given to a town's determination that a necessity exists for its adoption. *Marshall* v. *Town of Topsfield*, 13 Mass. App. Ct. 425, 428 (1982). Following that principle, and following the implications of *Goldman* and *Sullivan*, we conclude that the explicit by-law provision which requires the plaintiff to seek a special permit before he may convert his motel units to condominium ownership is valid.

*Judgment reversed.*