JOHN F. HEBSHIE, trustee,[1] & others[2] *vs.* BOARD OF
SELECTMEN OF WEST BRIDGEWATER.

No. 94-P-715.

Suffolk. May 10, 1995. - August 11, 1995.

Present: KASS, GILLERMAN, & PORADA, JJ.

*Mobile Home. Rent Control*, Mobile home. *Municipal Corporations*, By-
laws and ordinances, Home rule, Rent control, Permit for discontinu-
ance of mobile home park.

Where West Bridgewater was authorized by St. 1992, c. 15, to adopt a by-
law regulating the discontinuance of mobile home parks, the town also
had the implied authority, in the circumstances of a housing emergency
and in order to effectuate the legislative intent of the statute, to adopt a
by-law provision to regulate the discontinuance of a mobile home park
notice of which had been given prior to the adoption of the by-law. [91-
93]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 16, 1993.

The case was heard by *Regina L. Quinlan*, J.

*Vincent R. Brogna* (*Edward H. London* with him) for the
plaintiffs.

*John P. Lee* for the defendants.

GILLERMAN, J. A judge of the Superior Court affirmed the
decision of the board of selectmen (the board) of the town of
West Bridgewater (the town) that denied the application of
the plaintiffs (Beacon) for a permit to discontinue the opera-
tion of their mobile home park. See G. L. c. 30A, § 14. On
appeal, Beacon claims that the town unlawfully enacted a
by-law containing a provision that applies to Beacon's notice
of discontinuance of its park's operation, which notice had

---

[1]Of Hebshie Brothers Trust, doing business as Beacon Mobile Home
Park.

[2]Unnamed trustees of Hebshie Brothers Trust.

been given before the town adopted the by-law. We affirm the judgment of the Superior Court.

The undisputed facts, and those found by the town's rent control board, are these. On August 6, 1991, Beacon gave a two-year written notice of its intent to discontinue the use of its land as a mobile home park, which contains sixty-seven mobile home sites, effective October 1, 1993 (the two-year notice), to its tenants, as required by G. L. c. 140, § 32L(7A) & (8).

At the time Beacon gave the two-year notice to its tenants, Beacon was subject to a local by-law, adopted pursuant to the authority granted by St. 1986, c. 393, regulating rents for and evictions from mobile home parks located in the town. Neither St. 1986, c. 393, nor the town's by-law as in effect on the date of Beacon's notice, however, contained any provisions regulating the *discontinuance* of mobile home parks.

On January 22, 1992, the town filed a home rule petition with the Legislature requesting enabling legislation to allow the town to regulate the discontinuance of mobile home parks.[3] On April 10, 1992, the Legislature enacted St. 1992, c. 15 (the "enabling act"), which, inter alia, authorized the town to adopt a by-law regulating the discontinuance of mobile home parks. Section 2 of the enabling act provides that:

> "The general court finds and declares that a serious public emergency exists with respect to the housing of a substantial number of citizens in the town of West Bridgewater, which emergency has been created by excessive, abnormally high and unwarranted rental increases imposed by some owners of mobile home parks located therein and by the threatened discontinuance of

---

[3]According to the brief filed by the defendants, on or about June 17, 1991, at a town meeting, the request of Beacon's tenants to seek enactment of special legislation to regulate the discontinuance of mobile home parks in the town was approved. This approval occurred approximately seven weeks prior to Beacon's giving its two-year notice of discontinuance. The record before us does not include any documentation of these assertions, but Beacon has not disputed the statements.

the use of certain mobile home parks by the owners thereof; that unless mobile home park rents and evictions of tenants and the discontinuance of mobile home parks are regulated and controlled, such emergency will produce serious threats to the public safety, health and general welfare of the citizens of West Bridgewater and will produce a drastic loss of housing units, will increase homelessness and will cause the loss of many residents' life savings, especially the elderly."

Section 6(*a*) of the enabling act provides that: "The town may by its by-laws regulate the discontinuance of the use of part or all of the land owned and licensed as a mobile home park." Other subsections provide that it shall be unlawful for any person to discontinue the use of land licensed as a mobile home park without first having obtained a discontinuance permit from the board and outline the procedure to be followed.

An application for the permit must be filed with the board, which must forward the application to the mobile home park rent control board of the town. Public hearings are to be held, following which the rent control board makes a report with recommendations to the board. The board may not act on an application until it receives the recommendation of the rent control board (unless twenty-one days elapse without the report having been submitted).

Section 6(*h*) provides that the findings of the rent control board must include consideration of "the benefits and detriments to the *persons whom this act and this section seek to protect*" (emphasis added), "the hardships imposed on the tenant residing in the mobile home park," the "circumstances demonstrating hardship and inequity" to the owner of the park, mobile home park vacancy rates and average rental rates in mobile home parks in the town, and the availability of land suitable for the development of mobile home parks.

Section 6(*i*) provides that an application for a discontinuance permit must be made within thirty days of the service of the two-year notice upon the tenants in the mobile home

park. The statute is silent as to its effect upon a two-year notice given prior to the effective date of the enabling act.

On June 15, 1992, the town held a special town meeting and adopted a by-law entitled "Mobile Home Parks - Rent Control and Discontinuance of Parks" (the by-law). The relevant portion of the by-law is § 7(h), which provides that:

> "h. The licensee or applicant seeking a discontinuance permit must make application to the Board of Selectman for such permit within thirty (30) days of serving the tenants with the notice required under the provisions of Subsection 8 of Section 32L of Chapter 140 of the General Laws *or within 30 days from effective date of this by-law if said notice has already been served, and is prior to the effective date of discontinuance.*" (Emphasis added.)

The portion of §7(h) which is not underlined follows the language of § 6(i) of the enabling act; the underlined portion is found only in the by-law.

On July 16, 1992, Beacon, reserving all rights, filed a petition for a discontinuance permit. In its application to the board, Beacon disputed the town's authority to adopt a by-law regulating discontinuance permits that would apply to a two-year notice of discontinuance given prior to the enactment of the enabling act.[4] On November 19, 1992, the rent control board considered Beacon's application at a public hearing and subsequently recommended that the application be denied. The rent control board found the following relevant facts: a majority of tenants in Beacon's park have low or moderate incomes; many are elderly and have serious physical handicaps and illnesses; the residents invested substantial portions of their life savings in their mobile homes; no other mobile home park accommodations are available in the town or within a radius of one hundred miles from Beacon's park;

---

[4]In the administrative proceedings and in the Superior Court, Beacon also challenged the constitutionality of the enabling act and the town's by-law, but Beacon's brief to this court states that argument is "not an issue in this appeal."

there is no affordable housing in the town where the tenants could find housing; the discontinuance would have a devastating effect on the elderly and disabled tenants; discontinuance would seriously aggravate the shortage of safe and affordable mobile home park accommodations; and the hardships imposed by the discontinuance on the tenants clearly outweigh any hardship and inequities Beacon would experience if the discontinuance permit were denied. Beacon does not challenge these findings. On January 19, 1993, the board voted to deny Beacon a permit for discontinuance of its mobile home park.

*Discussion.* The town's by-law purports to apply to two-year notices of discontinuance given prior to the effective date of the enabling act and the adoption of the by-law. The enabling act contains an express grant of authority for the town to enact by-laws regulating the discontinuance of mobile home parks, but there is no specific authority for the town to adopt a by-law provision which regulates a discontinuance notice given prior to the adoption of the by-law.[5] Further, the by-law is outside the scope of municipal authority provided by the Home Rule Amendment, see §§ 6 & 7 of the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth, discussed in *CHR Gen., Inc.* v. *Newton,* 387 Mass. 351, 353-355 (1982). No claim is made by the town that § 7(*h*) is incident to the exercise of an independent municipal power. Compare *Bannerman* v. *Fall River,* 391 Mass. 328, 332 (1984). In these circumstances, § 7(*h*) of the town's by-law "is valid only if it is necessary to effectuate the legislative intent embodied in the statute relied on as the source of municipal power." *Greater Boston Real Estate Bd.* v. *Boston,* 397 Mass. 870, 877 (1986). See also *Flynn* v. *Cambridge,* 383 Mass. 152, 158 (1981) ("When analyzing a grant of power to a municipal government we must keep in mind that 'a grant of an express power carries with it all unexpressed, incidental powers necessary to carry it into

---

[5]Contrast St. 1993, c. 145, regulating manufactured housing communities, § 21 of which makes certain of its provision applicable to "pending and future notices of discontinuance."

effect.' 3 C. Sands, Sutherland Statutory Construction
§ 64.02 [4th ed. 1974]"); *Steinbergh* v. *Rent Control Bd. of
Cambridge,* 406 Mass. 147, 149 (1989) ("the grant of ex-
press powers . . . carried with it a grant of those implied
powers necessary to effectuate the statutory goals").[6]

The issue presented is whether the disputed by-law provi-
sion is *necessary* to effectuate the goals of the enabling act.
*Steinbergh* v. *Rent Control Bd.,* 406 Mass. at 151, and cases
cited. The goals of the enabling act are clearly set forth in
section 2, quoted above. The findings of the rent control
board relate directly to these statutory goals. The majority of
the tenants in the park are persons with low and moderate
incomes, many of whom are elderly and have serious physical
handicaps. These persons have invested their life savings to
acquire their mobile homes. There are no available mobile
home park sites within one hundred miles of Beacon's park.
*The discontinuance of Beacon's park "would have devastat-
ing effect on the tenants, and would seriously aggravate the
shortage of safe, decent and affordable mobile home park
accommodations"* (emphasis added). Finally, the board
found that the hardship which the discontinuance would im-
pose on the tenants outweighs any hardship likely to be suf-
fered by Beacon.

We conclude that, in the circumstances presented, the
town had the implied authority to enact § 7(*h*) in its entirety.
The statutory goal is to regulate discontinuance notices and
thereby to prevent the exacerbation of an existing public
emergency regarding mobile home parks in the town which,
if left uncontrolled, will present a serious threat to public
health and safety, and will increase homelessness in the
town. Whether to permit a proposed discontinuance of a mo-

---

[6]Beacon first argues that the enabling act should not be given retroactive
effect, citing *Building Inspector of Acton* v. *Board of Appeals of Acton,*
348 Mass. 453, 456 (1965). This argument misses the mark, for it is the
validity of the by-law that is at issue, not whether the enabling act should
be given retroactive effect. Beacon does not argue that, even if the by-law
is found to be necessary to effectuate the goals of the enabling act, the
application of the by-law's retroactivity provision would be unlawful. As
stated at note 5, *supra,* Beacon makes no constitutional arguments.

bile home park is left to the judgment of the board following receipt of the detailed findings of the rent control board. If this approval process were to be inapplicable to all discontinuance notices given prior to the adoption of the town's by-law, the statutory goals could be defeated to the extent of the diminution of mobile home park spaces that would result from notices given prior to the adoption of the by-law. Given the finding of the General Court that a housing emergency exists, the town was warranted in concluding that the statutory goals would be seriously impeded unless § 7(*h*) was enacted.

Moreover, in this case, the rent control board made unchallenged findings that the discontinuance of Beacon's mobile home park would have a "devastating effect" upon the park's elderly tenants — the intended beneficiaries of the act — and would aggravate the existing shortage of mobile home park accommodations. Whatever may be said of other cases involving different facts, the application of § 7(*h*) to Beacon was plainly necessary, indeed essential, to avoid a major defeat to the goals approved and enacted in the enabling act.

For the foregoing reasons, the judgment must be affirmed.

*So ordered.*